UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------X
MASIMBA MUTEMA,

                    Plaintiff,                **MEMORANDUM AND ORDER**

    -against-                            14-CV-3391 (DRH)(GRB)

FIDELITY INSURANCE COMPANY,

                    Defendant
---------------------------------------------------X

**APPEARANCES;**

**Harbatkin & Levasseur P.A.**
Attorneys for Plaintiff
616 E. Palisades Ave, suite 102
Englewood Cliffs, N.J. 07632
By: David M. Harbatkin, Esq.

**Brenner, Evans & Millman, P.C.**
Attorneys for Defendant
411 E. Franklin Street, Suite 200
P.O. Box 470
Richmond, VA 23218
By: Theodore I. Brenner, Esq.

**HURLEY, Senior District Judge:**

       Plaintiff Masimba Mutema ("plaintiff") commenced this action against defendant Fidelity National Property and Casualty Insurance Company ("defendant" or "Fidelity"), incorrectly sued herein as Fidelity Insurance Company, on May 29, 2014, alleging that defendant breached an insurance contract by improperly adjusting her claims for property damage caused by Hurricane Sandy.

       Presently before the Court is the *sua sponte* Report and Recommendation of Magistrate Judges Cheryl L. Pollak, Gary R. Brown, and Ramon E. Reyes, Jr., dated February 22, 2016 ("R

& R"), recommending that this matter be dismissed with prejudice for failure to prosecute pursuant to Rule 41 of the Federal Rules of Civil Procedure. For the reasons set forth below, this action is dismissed for failure to prosecute pursuant to Federal Rule of Civil Procedure 41.

I.     **BACKGROUND**

Because of the over 1,000 cases filed against insurance carriers seeking payment under standard flood insurance policies as result of damage caused by Hurricane Sandy, the Board of Judges of the Eastern District of New York instituted a number of procedures to handle these cases. Those procedures included designating United States Magistrate Judges Gary R. Brown, Cheryl L. Pollak, and Ramon E. Reyes, Jr. as a Committee (the "Sandy Committee") to oversee discovery and other matters related to these litigations and the opening of a "master" case number, *viz.* 14-MC-41, similar to that used in multidistrict litigation. Under those procedures, when a matter is identified as an insurance claim arising from Hurricane Sandy case it is added to the master case. As a result, counsel who were already on the master case receive notice of the commencement of the action apart from service of process.

The instant case is one of a number of Hurricane Sandy cases in which at the time of their commencement the law firm of Harbatkin & Levasseur (the "Harbatkin firm") represented the plaintiff. This case was filed on May 29, 2014 and designated a Hurricane Sandy Case on June 4, 2014. At the time of filing, no summons was issued. On June 19, 2014, the first of three notices of appearance was filed on behalf of defendant. (DE 6.)

Plaintiff took no action to prosecute this case until he filed a "motion for extension of time to serve process on defendant" on January 8, 2015 (DE 41). The application covered this case as well as other Hurricane Sandy cases in which the Harbatkin firm was counsel and was the

result of a show cause hearing held on December 10, 2014 as to why the Hurricane Sandy cases brought by the Harbatkin firm should not be dismissed. At the December 10 hearing, Mr. Levassuer of the Harbatkin firm was ordered to file a motion to appear pro hac vice and, by December 19, 2014, to either file motions for additional time to serve the summonses and complaints on the defendants or submit a stipulation allowing late service in each case.

According to the motion for extension of time to serve, the present case was among several cases that the Harbatkin firm "was contracted by [the Texas firm of] The Voss Law Firm Center to assist with the prosecution of Hurricane Sandy cases in both New Jersey and New York by serving as local counsel." (*Id.* at ¶ 2.) After the Harbatkin firm filed this and other cases but before summons for service were filed, another firm filed notices of appearance purporting to represent the same plaintiffs. (*Id*. at ¶¶ 2-4.) In coordination with the Voss Law Firm and "the clients," a review of the cases actually designated for the Harbatkin firm to "formally process and serve" was undertaken, which process, according to the motion, "significantly delayed effectuation of service." (*Id*. at ¶ 5.) The motion acknowledged that at the show cause hearing Magistrate Judge Pollak "ordered that the plaintiff file affidavits of service from defendant counsel indicating that they were accepting service, or alternatively to file pro hac motion and motions to extend the time to serve process by December 19, 2014." (*Id*. at ¶ 7.)[1] Admitting that "proper service under Rule 4(m) upon a defendant within the time allowed is the plaintiff's responsibility," (*id*. at ¶15) and asserting that "administrative issues present in this present case . . . should not cause outright dismissal particularly where, as here, Plaintiff counsel have been diligent in their efforts to prosecute the cases," (*id*. at ¶25), plaintiff requested an order extending

---

[1] The motion also set forth reasons why it was not timely filed by December 19, 2014.

the time to serve process for thirty-five (35) days from the granting of the motion (*id*. at ¶27; DE 41-3).

The motion for an extension of time to serve process was ruled on by Order dated April 1, 2015. (DE 51). In that Order, the Sandy Committee noted that Mr. Levasseur of the Harbatkin firm had filed a motion to be admitted pro hac vice in the cases where he sought an extension of time to serve defendants, which pro hac vice motion the Sandy Committee denied "based upon a 'pending disciplinary matter' disclosed in Mr. Levasseur's motion as well as the 'Court's unsatisfactory experience with Mr. Levasseur'" and that Mr. Harbatkin of the Harbatkin firm, recently admitted to practice in this Court, had filed notices of appearance in this case, as well as other cases, for which the Court had received communications indicating that the plaintiffs intended to obtain new counsel. (*Id*. at pp. 3-4.) The Sandy Committee also referenced the sanctioning of Mr. Levasseur and Mr. Voss in a Hurricane Sandy case pending in the District of New Jersey and the concerns expressed by that court. (*Id*. at pp. 4-5.) Stating that "[i]n light of the foregoing," it "has serious concerns that Mr. Harbatkin has actually obtained consent to represent the clients on whose behalf he has filed notices of appearances" and given that Mr. Harbatkin "still has not effected service . . . even after Mr. Levasseur moved for an extension of time to effect service on January 8, 2015," the Committee ordered that Mr. Harbatkin appear in person on April 9, 2015 and provide the Court with affidavits confirming that the Hurricane Sandy plaintiffs he purported to represent had in fact retained him. Lastly, the April 1 Order granted the motion for an extension of time to effect service "pending the resolution of plaintiff's representation . . . ." (*Id*. at pp. 5-6.)

The hearing was held on April 9, 2015 with the resultant Order being entered on April 21,

4

2015. In that Order, Judge Pollack noted that at the hearing Mr. Harbatkin conveyed his intention to withdraw as counsel in all the cases in which he had filed notices of appearance *except for the instant case* and had subsequently filed the motions. Judge Pollack granted Mr. Harbatkin's motions to withdraw. She further directed the affected plaintiffs to notify the Court whether they had obtained counsel or wished to proceed pro se and warned that the failure of those plaintiffs to notify the Court of their intentions could result in dismissal for failure to prosecute. (DE 55.)[2]

On July 28, 2015, the Sandy Committee ordered the parties to provide a joint status report. Defendant filed a status report informing the Court that the defendant had not received a direction from FEMA to convey a settlement offer to the plaintiff. (DE 64.)

On October 1, 2015, the Sandy Committee issued an Order to Show Cause directing the parties in this case, among others, to appear on October 6, 2015. (DE 70.)[3] By letter dated October 2, 2015, defendants requested that this case be removed from the October 6 hearing. (DE 71.) That application was not addressed prior to the hearing[4] and the hearing proceeded on October 6. The minute entry for that hearing states: "Pl[aintiff's] counsel fails to appear. Since the complaint has never been served and counsel has failed to pursue the case despite numerous orders from this Court, a recommendation will issue to dismiss the case for failure to prosecute."

---

[2] The Order also provided that although Fidelity had not been served "in the above-captioned cases" (which included the instant case), it was ordered to serve a copy of the Order on plaintiffs directly by mail at their last known mailing addresses. (DE 55 at p. 4.)

[3] The Court notes parenthetically that the docket sheet reflects various orders entered between April 21 and October 1, 2015 applicable to all Hurricane Sandy cases.

[4] The application was deemed moot by Order dated October 14, 2015.

(DE 72.)

The Report and Recommendation was issued on February 22, 2016. According to the R & R:

> the Court relieved David Harbatkin of the representation and Ordered plaintiff to obtain new counsel or indicate her intent to proceed pro se by May 28, 2015, Plaintiff did neither.
> Noting that the Complaint had yet to be served on the defendant, the Honorable Cheryl L. Pollak Ordered plaintiff to appear before the undersigned on September 30, 2015 to explain the delay, warning that a failure to appear could result in dismissal of the action. Plaintiff failed to appear.
> No action has been taken to move this case forward since its filing in May 2014. Indeed, the Court has heard nothing from the plaintiff indicating any intent to proceed with this litigation. In light of the continued failure to make progress in this case, the fact that over a year and a half has passed since the case was filed and it appears that defendant may still not have been served with the Complaint, the Court respectfully recommends that the case be dismissed.

R & R at pp. 1-2.

## II.   THE PARTIES' CONTENTIONS

On March 8, 2016 plaintiff filed objections to the R & R. (DE 75.) Plaintiff points out that the R & R erroneously states that Mr. Harbatkin was relieved as counsel in this case. According to the objections, "counsel has in fact proceeded to represent the Plaintiff, in both his Flood and homeowner's insurance matters arising from Hurricane Sandy. Several court appearances, depositions, and other fact discovery has [sic] transpired in the Plaintiff's Homeowner's insurance matter Masimba Mutema v. New York Property Underwriting Association, Nassau County, Index No. 60314/2013." Additionally, it is stated that "counsel's firm has also submitted Mr. Mutema's claim to FEMA during the FEMA Review process on

August 21, 2016[sic]"[5] and "[w]hile the matter has not been resolved, undersigned counsel intends to further engage requisite processes necessary to resolve the case to completion." (DE 75 at ¶¶ 6-7.) As evidence of the request for FEMA review, a letter from counsel dated August 21, 2015 is attached to the objections which letter "request[s] review of our clients' pending claims in litigation with the objective of settling the matters . . . ." The letter has attached to it a list of policy holders with their case names and numbers, including this case, and concludes with "[w]e await your instructions as to how best to provide the supporting documentation underlying each of our clients' claims in the subject cases." (DE 75-1.)

Defendant filed a response to plaintiff's objections which states, among other things, (1) plaintiff has never served it with process; (2) despite not being served, defendants made Case Management Order ("CMO") 1 disclosures to plaintiff while plaintiff has never complied with CMO 1; (3) it has been informed that other than the facsimile letter dated August 21, 2015, "plaintiff has submitted no claim documentation to FEMA within the time limits imposed by FEMA and Counsel for FEMA has advised that the claim is not now eligible for review under the FEMA settlement process;" (4) under the standard flood insurance policy issued by it to plaintiff, plaintiff's claim was evaluated prior to suit and the amount of building coverage damage was estimated at $71,753.22, less $1,295.74 non-recoverable depreciation, less a $5,000 deductible, resulting in a building coverage payment of $65,457.58 and contents coverage was estimated above the $20,000 policy limit and $20,000 was paid; and (5) except for a two page, non-itemized and unsigned document, dated December 5, 2012, no further claim information or

---

[5] The Court notes that while the objections state the letter to FEMA was submitted on August 21, 2016, the letter itself is dated August 21, 2015.

documentation was presented to Fidelity. (DE 76.)

Plaintiff filed a reply in further support of his objections and in response to defendant's filing. Plaintiff asserts that the "February 22, 2016 Report and Recommendation, applicable to Plaintiffs for whom the undersigned withdrew, inadvertently included [plaintiff]" and "to the extent it included Mr. Mutema" it "was merely a clerical error." (DE 77 at p. (unnumbered) p. 2.) Plaintiff maintains that defendant's "collateral attacks" on plaintiff's objections to the R & R are improper and that adopting the portion of the R & R that refers to Mr. Harbatkin being relieved as counsel and plaintiff failing to advise the Court whether new counsel would be obtained or he would continue the action pro se would be clearly erroneous. (*Id.* at (unnumbered) pp. 7-9.) It is also argued that as defense counsel had requested the Court remove this case from the October 6, 2015 hearing, to now claim that plaintiff's non-appearance at the hearing warrants dismissal is "disgraceful." (*Id*. at (unnumbered) p. 9.) Plaintiff further asserts that defendant has waived the defense of "insufficiency of process" because defendant filed notices of appearance, complied with the Court's order to provide a status report, and filed objections to the R & R and that as Fidelity never timely raised the defense that it was not served, "the court cannot sua sponte revive that defense." (*Id*. at (unnumbered) p. 10.) Finally, it is asserted that defendant's failure to file an answer "has prejudiced plaintiff's ability to engage in meaningful discovery" and "[i]t is the height of hypocrisy for this Defendant, who has fully participated in these proceedings, but who has yet to so much as file an answer more than three (3) years after the filing of the Complaint, and almost two (2) year after first filing a Notice of Appearance in this case to now, out of the blue, accuse [sic] Plaintiff of being the party that has caused undue delay to these proceedings." (*Id*. at (unnumbered) p. 11.)

## III. DISCUSSION

### A. Standard of Review

Federal Rule of Civil Procedure 72(b) provides that when a magistrate judge issues a report and recommendation on a matter "dispositive of a claim or defense of a party," the district court judge shall make a de novo determination of any portion of the magistrate judge's disposition to which specific written objection has been made. Fed. R. Civ. P. 72(b); *see Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990). Accordingly, the Court shall conduct a de novo review.

### B. The Report's Recommendation is Adopted

In its R and R, the Committee recommends that "this matter be dismissed with prejudice for failure to prosecute, pursuant to Rule 41 of the Federal Rules of Civil Procedure." R & R at 2. The R & R erroneously reports that Mr. Harbatkin was relieved of counsel and that plaintiff was required to, but did not, advise the Court whether new counsel would be obtained or he would continue the action pro se. That portion of the R & R will not be adopted. Nevertheless, this Court finds that plaintiff and his counsel have abdicated the duty to prosecute this action and therefore dismissal for failure to prosecute is appropriate.

As the R & R aptly states, "[a] dismissal for failure to prosecute may be ordered *sua sponte*." R & R at 2 (citing *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001) ("it is unquestioned that Rule 41(b) also gives the district court authority to dismiss a plaintiff's case *sua sponte* for failure to prosecute")). *See also Link v. Wabash R.R. Co.*, 370 U.S. 626, 631-32 (1962) (district court has inherent power to dismiss case *sua sponte* for failure to prosecute)*; Culton v. N.Y. State Dept. of Corr. Servs.*, 299 Fed. Appx. 96, 97 (2d Cir. 2008) (affirming

dismissal of action for failure to prosecute under Rule 41(b) after the plaintiff's failure to comply with court orders resulted in defendant wasting time by attending a status conference and a settlement conference).

In analyzing whether to dismiss a plaintiff's case pursuant to Rule 41(b), a district court must consider five factors, to wit: "(1) the duration of the plaintiff's failures, (2) whether plaintiff had received notice that further delays would result in dismissal, (3) whether the defendant is likely to be prejudiced by further delay, (4) whether the district judge has take[n] care to strik[e] the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard . . . and (5) whether the judge has adequately assessed the efficacy of lesser sanctions." *LeSane*, 239 F.3d at 209 (alterations in original); *see also Baptiste v. Sommers*, 768 F.3d 212, 217 (2d Cir. 2014). "Generally, no one factor is dispositive." *Martens v. Thomann*, 273 F.3d 159, 180 (2d Cir. 2001); *Nita v. Connecticut Dept. of Envir. Protection*, 16 F.3d 482, 485 (2d Cir. 1994). The Court will address each factor *seriatim*.

1. The Duration of Plaintiff's Failures

In the instant case, no progress in the prosecution of this case has occurred since its inception. Even if the Court were to excuse the nearly one year of inaction from the filing of the complaint until the issue of the Harbatkin firm's representation of this and other plaintiffs was resolved in April 2015, plaintiff's failure to prosecute would span over a year. *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 42–43 (2d Cir. 1982) (observing that dismissal under Rule 41(b) for dilatory conduct may be warranted "after merely a matter of months"); *Brow v. City of New York*, 391 Fed. Appx. 935, 937 (2d Cir. 2010) (affirming dismissal where pro se plaintiff caused nearly six month delay); *Ruzsa v. Rubenstein & Sendy Attys at Law*, 520 F.3d 176, 177

(2d Cir. 2008) (affirming dismissal where pro se party caused seven month delay).

The Court finds unpersuasive the argument that Defendant has waived service of process given the representations made in plaintiff's motion for an extension of time to serve process, that that motion was made after defendant's notices of appearance were filed, and the Court's orders in this case. Even if Defendant has waived process, that does not take away from the fact that this case has lay essentially dormant from its inception to the issuance of the R & R. In using the word "essentially," the Court notes that any action undertaken in this matter has been taken either by the Court or defendant. As plaintiff aptly notes, defendant has "fully participated in these proceedings" by making disclosure to plaintiff, filing notices of appearances and motions for pro hac vice admission, and filing status reports, (DE 77 at (unnumbered) p. 10), to which list the Court would add appearing at conferences set by the Court. Conspicuously absent from plaintiff's filings with respect to the R & R is the submission of any material - or even an allegation - that after April 2015 and prior to the issuance of the R & R, plaintiff has taken actions to proceed with this matter. Specifically, no communications from plaintiff to defendant have been submitted inquiring as to an answer to the complaint. There is no indication that plaintiff sought or provided discovery, or followed up on the August 20, 2015 letter to FEMA. It was not until *after* the issuance of the R & R that plaintiff took any action to move this case forward and rather than providing the information required by CMO 1, plaintiff filed a request to note Fidelity's default. Further, that discovery may have been taken in a different case commenced by this plaintiff against a different insurer in a different court is simply irrelevant.

The Court is underwhelmed by plaintiff's attempt to deflect the Court's attention from his lack of prosecution by placing the blame on defendant. That defendant may have *requested* that

the instant matter be removed from the October 6, 2015 hearing did not relieve either party from appearing at the hearing as the application was not granted. Defendant obviously knew that as it did, in fact, appear. Perhaps the Court would be more sympathetic if there was an indication from plaintiff that there was an attempt to determine whether defendant's request was granted but there is none; plaintiff simply ignored the Court's order to appear. *Cf. Peart v. City of New York*, 992 F.2d 458, 461 (2d Cir. 1993) (duration factor is of limited significance where party deliberately disobeys court orders). Similarly, that CMO 1 required disclosures to be made after an answer was filed, did not relieve plaintiff of the obligation to prosecute this case. If plaintiff was of the mind that defendant's failure to file an answer "severely prejudiced Plaintiff's ability to engage in meaningful discovery and prosecute this case in a timely manner" [DE 77 at (unnumbered) p. 11], then plaintiff should have taken some action - whether it be contacting defendant or moving for a default - rather than simply letting this matter languish until prompted to take action by the R & R.

In sum, the first factor favors dismissal.

      2.      <u>Notice of Potential Dismissal</u>

Orders to show cause warning of dismissal were issued in December 2014 and October 2015. Additionally, the minute entry for the October 6, 2015 hearing which stated that "a recommendation will issue to dismiss the case for failure to prosecute" [DE 72], constituted a notice of potential dismissal and yet plaintiff still took no action until after that recommendation was actually issued more than six (6) months later. The second factor strongly favors dismissal. *See Peart v. City of New York*, 992 F.2d 458, 462 (2d Cir. 1993) (dismissal for failure to comply with court order directing plaintiff's counsel to submit certain pre-trial materials upheld where

plaintiff's counsel "indisputably received ... notice" that the case would be dismissed if the court's order was not complied with); *Lyell Theatre Corp.*, 682 F.2d at 42 (Rule 41(b) dismissal upheld where appellant was warned on numerous occasions both by the court and by its adversary that dismissal of the action for failure to prosecute was possible); *Hedvat v. Rothschild*, 175 F.R.D. 183, 189 (S.D.N.Y. 1997) (express warning to plaintiffs on two separate occasions that a failure to prosecute could result in dismissal of its claims supported dismissal pursuant to Rule 41(b)).

3. Prejudice to Defendant

The Second Circuit has held that "[p]rejudice to defendants resulting from unreasonable delay may be presumed." *Shannon v. Gen. Elec. Co.*, 186 F.3d 186, 195 (2d Cir. 1999). Here such a presumption is particularly appropriate as there is no reasonable explanation for the delay. *See Henry F. v. Woodlick*, 2014 WL 5878122, at *4 (E.D.N.Y. Nov. 12, 2014).

4. Balancing

Turning to the fourth factor, the Court finds that plaintiff's due process rights have been adequately balanced against the need to alleviate court congestion. This case has been pending for over two years without any activity on plaintiff's part to move the case forward. *See Williams v. Partrich*, 2008 WL 1847883, at *4 (S.D.N.Y. Apr. 24, 2008) ("While a single case does not overly burden the Court's calendar, protracted delays in a case will burden the Court."). When the Hurricane Sandy cases came flooding into this Court, the Board of Judges took steps to ensure that each of those cases, numbering over one thousand, were handled in a just and speedy fashion. The failure to prosecute this case has thwarted those efforts.

5. Efficacy of Lesser Sanctions

Finally, the Court finds that lesser sanctions would be fruitless given the December 2014

13

and October 2015 orders to show cause warning of the potential for dismissal and the continuing lack of any effort to prosecute this case even after those orders to show cause and the minute entry for the October 6, 2015 warning that a recommendation of dismissal for failure to prosecute would be forthcoming. *See Davis v. Town of Hempstead*, 597 Fed. Appx. 31, 32 (2d Cir. 2015); *Rogers v. Villafane*, 2013 WL 3863914, at *3 (E.D.N.Y. July 24, 2013) ("There is no indication that a lesser sanction, such as a fine, would be effective, given the plaintiff's failure to take any action for several months to indicate an interest in pursuing this case.").

In sum, a balancing of the five factors warrants dismissal of this case for failure to prosecute.

## IV. CONCLUSION

For the reasons set forth herein, this action is dismissed with prejudice pursuant to Rule 41 of the Federal Rules of Civil Procedure for failure to prosecute. The Clerk of Court shall enter judgment accordingly and close this case.

**SO ORDERED.**

Dated: Central Islip, New York
September 30, 2016

    /s  Denis R. Hurley
Denis R. Hurley
United States District Judge